IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

GLENNA HOLLIMAN                                                                                    PLAINTIFF

V.                                          CASE NO. 3:15-CV-00371 JTK

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION                                                                                     DEFENDANT

**ORDER**

**I. Introduction:**

Plaintiff, Glenna Holliman, applied for disability benefits on February 8, 2013, alleging a disability onset date of December 1, 2009. (Tr. at 27). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 38). The Appeals Council denied her request for review. (Tr. at 1) The ALJ's decision now stands as the final decision of the Commissioner, and Holliman has requested judicial review.

For the reasons stated below, the Court[1] affirms the decision of the Commissioner.

**II. The Commissioner's Decision:**

The ALJ found that Holliman had not engaged in substantial gainful activity since the onset date of December 1, 2009. (Tr. at 29). The ALJ found at Step Two that Holliman had the following severe impairments: Bipolar Disorder, Panic Disorder, and PTSD. *Id*. At Step Three, the ALJ determined that Holliman's impairments did not meet or equal a listed impairment. (Tr. at 31). Before proceeding to Step Four, the ALJ determined that Holliman had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels except for the following

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

limitations: 1) only simple, routine, and repetitive tasks; and 2) only incidental interpersonal contact where supervision is simple, direct, and concrete. (Tr. at 33). Next, the ALJ found that Holliman is capable of performing past relevant work as a housekeeper. (Tr. at 37). The sequential evaluation, therefore, ended at Step Four and the ALJ found that Holliman was not disabled. (Tr. at 38).

### III. Discussion:

    A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

    B. Holliman's Arguments on Appeal

Holliman argues that substantial evidence does not support the ALJ's decision to deny benefits. She contends that the ALJ erred in holding that her shoulder pain did not impose significant limitations on her ability to work. If the ALJ had found the shoulder pain to be a severely limiting impairment, Holliman argues, she could not have returned to past relevant work or perform any other jobs. Finally, Holliman asserts that the ALJ failed to give proper weight to Holliman's

Global Assessment of Functioning ("GAF") scores.

The medical evidence simply does not support Holliman's complaints of disabling pain related to her shoulder. She sought treatment in August 2010 for shoulder pain radiating into her chest. (Tr. at 331). X-rays were negative. (Tr. at 337). Holliman said her pain improved when medicated, and there was no shoulder diagnosis. *Id.* Impairments that are controllable or amendable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

On November 7, 2012, Holliman saw Dr. Miguel Casillas, M.D., and he noted that she was reluctant to seek medical help despite frequent pain. A failure to treat a condition is grounds for the ALJ ruling out the condition as a severe impairment. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

On April 16, 2013, state agency physician Dr. Roger Troxel, M.D., examined Holliman and found normal range of motion and no decreased ability to walk, stand, sit, lift, carry, handle, finger, see, hear, or speak. He did not diagnose shoulder pain. (Tr. at 410).

On November 4 and November 16, 2013, Holliman visited Corning Area Healthcare for shoulder pain. She had intermittent numbness and bluish discoloration. (Tr. at 445-450). Her range of motion was limited. Sensory and motor exams were normal. *Id*. Dr. George R. Guntharp, D.O., prescribed Cyclobenzaprine. (Tr. at 446).

On January 9, 2014, Holliman returned to Dr. Guntharp with shoulder pain that was increasing. (Tr. at 440). A chest x-ray was normal with no bony lesions. (Tr. at 444).

Holliman visited Dr. Spencer H. Guinn, M.D., on January 17, 2014 with bilateral shoulder pain. X-rays were negative. (Tr. at 453). Holliman said she had not had any treatment or therapy

yet, and that she was scared of needles. (Tr. at 452). She was "not interested at all" in a steroid injections so Dr. Guinn gave her a steroid pack and prescribed physical therapy. (Tr. at 453). There is no record that she attended therapy. Again, a failure to treat undermines a claimant's complaints of pain, and failure to seek more than conservative treatment does as well. *Smith*, 987 F.2d at 1374; *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) ("[f]ailure to follow a prescribed course of remedial treatment *without good reason* is grounds for denying an application for benefits").

A return visit to Dr. Guntharp on April 2, 2014 revealed good range of motion in her shoulders. (Tr. at 474). Holliman indicated that Valium was helping with her pain, and it "was much better." (Tr. at 473).

With no objective findings that indicated any shoulder injury or abnormality, and only conservative treatment in spite of recommendations by doctors, the Court cannot find reason to disturb the ALJ's decision that shoulder pain was not a severe impairment. Holliman's activities of daily living, which included caring for and feeding her two minor grandchildren and attending to her personal needs, also support the ALJ's finding.

The ALJ dismissed Dr. Casillas's lower GAF scores of 45 and 50, and instead relied upon a later GAF score of 55 in making his findings. This was not error.

Over several months in 2011, Holliman saw Dr. Casillas for mental health treatment and he found she had medication compliance and a good prognosis, as well as normal attitude, speech, and affect. (Tr. at 348, 351, 354).

When Holliman saw Dr. Casillas on November 7, 2012, he stated that over the past year, she had made steady progress in alleviation and management of her symptoms. (Tr. at 374). She reported good medication effectiveness and she had been able to increase her exposure to triggers

of anxiety.  *Id.*

On March 24, 2014, Holliman reported a deterioration of her mental symptoms and Dr. Casillas assigned her lowest GAF score, 45.  (Tr. at 466).  A GAF score of 45 indicates serious impairment in social, occupational, or school functioning.  *See Statistical Manual of Mental Disorders, 32-34 (4th Ed. TR 2000) (DSM-IV).*  This score does not correlate to Dr. Casillas's clinical examination just a week later, where he found good judgment and comprehension, good insight, good behavior and attitude, logical and sequential thought process, and very good attention and concentration.  (Tr. at 460).

The GAF score of 45 is also not supported by Holliman's activities of daily living, which include grocery shopping, doing laundry, playing games, paying bills, cleaning house, and caring for her grandchildren. (Tr. at 32).  Moreover, Holliman testified that her medications controlled her temper and allowed her to get out and go to stores.  (Tr. at 66).

As GAF scores do not directly correlate to the severity requirements of mental disorders listings, and only represent a snapshot assessment of a claimant, the ALJ was not bound to assign the scores here any greater weight than he did.  *Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010).  He properly evaluated the scores in conjunction with the medical evidence as a whole, and the Court finds support for his determination.

**IV. Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits.  The ALJ properly assessed Holliman's shoulder condition and gave the correct weight to her GAF scores.  The finding that Holliman was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is affirmed.  The case is dismissed, with prejudice.

IT IS SO ORDERED this 15th day of November, 2016.

_____
UNITED STATES MAGISTRATE JUDGE